# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
### PINE BLUFF DIVISION

BRIAN NELSON                                                    PETITIONER


v.                          NO. 5:15-cv-00013 BSM/PSH


WENDY KELLEY, Director of the                            RESPONDENT
Arkansas Department of Correction


### FINDINGS AND RECOMMENDATION


### INSTRUCTIONS


The following proposed Findings and Recommendation have been sent to United States District Judge Brian S. Miller. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection, and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

## FINDINGS AND RECOMMENDATION

I. STATE COURT PROCEEDINGS. In 2008, C.F. was a fourteen-year-old boy who lived near petitioner Brian Nelson ("Nelson"). See Transcript at 336-340. They became acquainted, and C.F. soon began doing yard work for Nelson. See Transcript at 338-339, 343-352, 362-365. C.F.'s parents knew that C.F. was working for Nelson and trusted Nelson to look after C.F. See Transcript at 418-419. C.F. eventually became acquainted with Nelson's ten-year-old son. See Transcript at 342, 352. Nelson's son invited C.F. to stay overnight on one occasion, and C.F. accepted the invitation after receiving his parents' permission. See Transcript at 352, 358-359, 398-399, 413. C.F.'s parents agreed to the arrangement with the expectation that Nelson would look after C.F., and C.F.'s father asked Nelson at one point to refrain from drinking alcohol around C.F. See Transcript at 418-419. During C.F.'s first stay at Nelson's home, Nelson sexually assaulted C.F. See Transcript at 354-358. Nelson thereafter sexually assaulted C.F. on two other occasions. See Transcript at 366-368, 372-374, 378, 406.

Nelson was eventually charged in an Arkansas state trial court with sexually assaulting C.F. At trial, Nelson did not deny having inappropriate sexual contact with C.F. but maintained that it was C.F. who initiated the contact. See Transcript at 444-481. Nelson was convicted of one count of sexual assault in the first degree, one count of sexual assault in the second degree, and two counts of sexual assault in the fourth degree. He was sentenced to the custody of respondent Wendy Kelley ("Kelley").

Nelson appealed his conviction to the Arkansas Supreme Court. It found no reversible error and affirmed his conviction. See Nelson v. State, 2011 Ark. 429, 384 S.W.3d 534 (2011).

Nelson then filed a state trial court petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37. The petition was denied, and he did not timely appeal the denial of his petition.

Nelson subsequently requested and received permission to file a belated appeal of his Rule 37 petition. During the course of the appeal, he filed a motion for an extension of time to file a brief. The Arkansas Supreme Court used the occasion of reviewing his motion as an opportunity to examine his petition. When the court determined that he could not prevail on appeal, his motion was denied and his appeal was dismissed. See Nelson v. State, 2014 Ark. 28, 2014 WL 260988 (2014).[1]

II. FEDERAL COURT PROCEEDINGS. Nelson commenced the case at bar by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. 2254 and joining Kelley. In the petition, and in a subsequently filed amended petition, he challenged his conviction and offered ten claims in support of his challenge. Five of the ten claims involved trial error or the constitutionality of an Arkansas statute, and the remaining five claims involved errors committed by his trial attorneys.

---

[1]

Nelson later filed a state trial court petition for reduction of sentence. See Pleading 1 at 118-127. The petition was eventually denied, and he did not timely appeal the denial of his petition.

Kelley filed a response to Nelson's petition. In the response, Kelley maintained that Nelson's petition should be dismissed because the claims contained in the petition are procedurally barred from federal court review or otherwise lack merit.

Nelson filed a reply to Kelly's response. In the reply, Nelson re-addressed each of his claims and attempted to explain why he was entitled to relief. As a part of re-addressing each claim, he offered proffers of testimony from five individuals. See Pleading 31. He maintained that had the individuals been permitted to testify, and testified consistent with their proffers, he would have been exonerated.

III. MOTIONS FOR DIRECTED VERDICT. The record reflects that Nelson moved for a directed verdict at the close of the State's case-in-chief and again at the close of all the evidence. See Transcript at 422-428, 481-482. It was his position that there was no evidence he was a temporary caretaker or person in a position of trust or authority over C.F., an essential element of sexual assault in the first degree and sexual assault in the second degree.[2] The trial judge denied the motions, and Nelson's first claim is that the trial judge erred when he did so. See Pleading 1 at 6-8. Nelson maintains, in part, that he could not have been C.F.'s caretaker when C.F. roamed their neighborhood at will and entered homes without permission. See Pleading 32 at 10.

---

[2]     A person commits sexual assault in the first degree if the person engages in sexual intercourse or deviate sexual activity with a minor who is not the actor's spouse and the actor is, inter alia, a temporary caretaker or a person in a position of trust or authority over the victim. See Ark. Code Ann. 5-14-124(a)(1)(C). A person commits sexual assault in the second degree if, inter alia, the person engages in sexual contact with a minor and the actor is a temporary caretaker or a person in a position of trust or authority over the minor. See Ark. Code Ann. 5-14-125(a)(4)(A)(iii). Sexual assault in the fourth degree does not contain a "temporary caretaker or a person in a position of trust or authority over the victim" element.

The Arkansas Supreme Court addressed the merits of Nelson's claim on direct appeal and, in doing so, applied a substantial evidence standard. See Nelson v. State, 384 S.W.3d at 535-537.[3] The court found "there was substantial evidence that [Nelson] was a temporary caretaker of C.F. or a person in a position of trust or authority over C.F.," and the trial judge did not err when he denied Nelson's motions for directed verdict. See Id. at 537.

"Constitutionally, sufficient evidence supports a conviction if, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See Garrison v. Burt, 637 F.3d 849, 854 (8th Cir. 2011) (emphasis in original) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). If a state court makes findings of fact on a challenge to the sufficiency of the evidence, the findings are accorded deference. See 28 U.S.C. 2254(d).[4] A state court's conclusion that the evidence satisfied the Jackson v. Virginia standard will not be disturbed unless the conclusion was "both incorrect and unreasonable." See Garrison v. Burt, 637 F.3d at 855 (quoting Cole v. Roper, 623 F.3d 1183, 1187 (8th Cir. 2010)).

---

[3]

"Substantial evidence is that evidence which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture." See Nelson v. State, 384 S.W.3d at 536.

[4]

A petition pursuant to 28 U.S.C. 2254 shall not be granted with respect to any claim adjudicated on the merits in state court unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. See 28 U.S.C. 2254(d).

The Arkansas Supreme Court's adjudication of Nelson's first claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Although the court did not apply clearly established federal law when it addressed the claim, the court's failure to do so is not problematic for two reasons. First, the substantial evidence standard used by the court in addressing the claim is consistent with the sufficiency of the evidence standard announced by the United States Supreme Court in Jackson v. Virginia. See Dansby v. Norris, 682 F.3d 711, 717-718 (8th Cir. 2012) (reversed on other grounds, Dansby v. Hobbs, — U.S. —, 133 S.Ct. 2767, 186 L.Ed.2d 215 (2013)). Second, neither the court's reasoning nor result contradict federal law.

The Arkansas Supreme Court's adjudication of Nelson's claim did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The court could and did find that C.F. was hired by Nelson to do yard work. C.F.'s parents knew that their son was working for Nelson and trusted Nelson to look after C.F. After C.F. became acquainted with Nelson's son, C.F. began staying overnight at Nelson's home. On one occasion, C.F.'s father asked Nelson to refrain from drinking alcohol around C.F. Given those facts, the court could and did find that there was substantial evidence Nelson was a temporary caretaker of C.F. or was otherwise a person in a position of trust or authority over C.F. Having so found, the court could and did conclude that the trial judge did not err when he denied Nelson's motions for directed verdict.

IV. <u>CONSTITUTIONALITY OF THE ARKANSAS RAPE SHIELD STATUTE</u>. The record reflects that prior to trial, Nelson filed a motion asking that the Arkansas Rape Shield Statute be declared unconstitutional so that he could offer "any evidence of prior sexual conduct of C.F. ..." <u>See</u> Transcript at 19. Nelson maintained that the statute violated the Separation of Powers Clause of the Arkansas Constitution because the statute supplanted the Arkansas Supreme Court's rule-making power. The trial judge denied the motion. <u>See</u> Transcript at 193-204. Nelson maintains as his second claim that the trial judge erred when he denied the motion. <u>See</u> Pleading 1 at 8-9.

The Arkansas Supreme Court addressed the merits of Nelson's claim on direct appeal. <u>See</u> <u>Nelson v. State</u>, 384 S.W.3d at 537-538. The court found that the rape shield statute does not completely bar evidence of a victim's sexual conduct but instead makes its admissibility discretionary with the trial judge. The court found the lack of a total bar on admissibility to be a critical feature of the statute and why it does not violate the Separation of Powers Clause of the Arkansas Constitution.

Federal court review of a state conviction is limited to determining whether the conviction violates the Constitution, laws, or treaties of the United States. <u>See</u> 28 U.S.C. 2254(a). "Federal habeas corpus relief does not lie for errors of state law," ... and "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." <u>See</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) (internal quotations omitted). <u>See</u> <u>also</u> <u>Evenstad v. Carlson</u>, 470 F.3d 777 (8th Cir. 2006) (federal courts lack authority to review state courts' interpretation and application of state law).

Nelson challenges the Arkansas Rape Shield Statute on the ground that it violates the Arkansas Constitution. Liberally construing his pro se pleadings, he does not allege that the statute violates the Constitution, laws, or treaties of the United States. Because he only alleges an error of state law, his claim warrants no relief.

V. NELSON'S PRE-TRIAL STATEMENT. The record reflects that police officers took a statement from Nelson in which he admitted having sexual contact with C.F. The trial judge found that Nelson gave the statement knowingly, voluntarily, and intelligently without coercion and admitted the statement into evidence. See Transcript at 212-218, 320. Nelson maintains as his third claim that the statement should not have been admitted into evidence because he had been drinking alcohol and taking Xanax before giving the statement. See Pleading 1 at 9.

The Arkansas Supreme Court rejected Nelson's claim on direct appeal. See Nelson v. State, 384 S.W.3d at 538-539. The court did so for two reasons. First, his conclusory allegation was not supported by the citation to any authority. Second, his assertion that he was impaired when he gave the statement went to the weight or credibility of the statement, not to whether it should be admitted into evidence.

Kelley maintains that claim is procedurally barred from federal court review because the Arkansas Supreme Court refused to consider it. Recognizing that judicial economy sometimes dictates reaching the merits of a claim rather than addressing the procedural bar question, see Barrett v. Acevedo, 169 F.3d 1155 (8th Cir. 1999), the undersigned reaches the merits of Nelson's claim and finds that it warrants no relief.

The trial judge rejected Nelson's challenge to the statement, and the trial judge's adjudication of the claim is entitled to deference. See Worthington v. Roper, 631 F.3d 487 (8th Cir. 2011) (federal court may "look through" state appellate opinion and apply deferential review to decision of lower state court). The trial judge's adjudication did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law or result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Lieutenant Robert Byrd ("Byrd") testified during a suppression hearing that he and Agent Shannon Shepard ("Shepard") interviewed Nelson as a part of their investigation. See Transcript at 212-218. Byrd advised Nelson of his Miranda rights prior to the interview, then took a statement from Nelson in which he admitted having sexual contact with C.F.[5] Nelson did not indicate that he had been drinking alcohol or taking Xanax, and there was nothing about his speech or demeanor to cause Byrd to believe that Nelson was impaired. Nelson seemed fully capable and competent at the time he gave the statement. Nelson did not testify at the hearing and offered nothing to support his allegation that he was impaired when he gave the statement. Id. Given those facts, the trial judge could and did find that the statement was given knowingly, voluntarily, and intelligently without coercion, and he could and did properly admit the statement into evidence.

---

[5]

Shepard did not testify at the suppression hearing. Nelson represents in a proffer that Shepard would testify Nelson was not apprised of his Miranda rights until after he gave the statement. See Pleading 31 at 4. Shepard did not, though, verify or otherwise attest to the proffer. In any event, Byrd testified that Nelson was apprised of his Miranda rights before giving the statement. See Transcript at 213.

VI. <u>ADMISSION OF CHARACTER EVIDENCE</u>. The record reflects that Cari Harp ("Harp") testified at trial. <u>See</u> Transcript at 438-443. When Nelson asked Harp if C.F. were a truthful person, the State objected on the ground that the question went to C.F.'s character. The trial judge sustained the objection. Nelson maintains as his fourth claim that Harp should have been allowed to testify about C.F.'s character pursuant to Arkansas Rule of Evidence 404(a)(2). <u>See</u> Pleading 1 at 9-13. Nelson represents in a proffer that Harp would have testified to C.F.'s bad acts. <u>See</u> Pleading 31 at 2-3.

The Arkansas Supreme Court declined to consider Nelson's claim on direct appeal. <u>See</u> <u>Nelson v. State</u>, 384 S.W.3d at 539. The court did so because Nelson did not make a proffer of Harp's excluded testimony, and the substance of her excluded testimony was not apparent from the record.

Kelley maintains that the claim is procedurally barred from federal court review because the Arkansas Supreme Court refused to consider it. Rather than wrestle with that question, the undersigned reaches the merits of the claim and finds that it warrants no relief for three reasons. First, Nelson's claim is built primarily upon a violation of state law. It is axiomatic, though, that a violation of state law warrants no federal habeas corpus relief.

Second, to the extent Nelson's claim is built upon a violation of federal law, his proffer of Harp's testimony is suspect. The proffer is simply his summary of how he believes she would have testified had she been allowed to testify about C.F.'s truthfulness. Harp never verified or otherwise attested to the proffer.

Third, notwithstanding the foregoing, the undersigned is not persuaded that the exclusion of Harp's testimony about C.F.'s truthfulness was so gross, conspicuously prejudicial, or otherwise of such magnitude that it fatally infected the trial and failed to afford Nelson the fundamental fairness which is the essence of due process. See Maggitt v. Wyrick, 533 F.2d 383 (8th Cir. 1976). The excluded testimony as reflected in the proffer of Harp's testimony is replete with hearsay and suggests, at most, that C.F. was capable of bad acts. It is not clear how the testimony is relevant to C.F.'s truthfulness. Moreover, the excluded testimony is not particularly compelling in light of the fact that Nelson admitted having sexual contact with C.F.

VII. JURY INSTRUCTION ON PAROLE ELIGIBILITY. Nelson's trial was bifurcated. After the jury returned a guilty verdict on several counts, the trial entered a penalty phase. During that phase, the trial judge instructed the jury on, inter alia, Nelson's right to good time credits while incarcerated, his eligibility for transfer to the Arkansas Department of Community Correction, and his possible placement in post-prison supervision. See Transcript at 528-530.[6] The State made extensive mention of Nelson's eligibility for parole during its argument during the penalty phase. See Transcript at 556-559. Nelson maintains as his ninth claim that the jury instruction on parole eligibility violated his constitutional rights because it caused the jury to impose a longer sentence than it otherwise would have. See Pleading 1 at 21-31.

---

[6]

The trial judge gave the instruction in accordance with Arkansas Model Jury Instruction (Criminal) 9402, which permits an instruction on the law applicable to parole, meritorious good time, and transfer.

The Arkansas Supreme Court declined to consider Nelson's claim when it dismissed the belated appeal of his Rule 37 petition. See Nelson v. State, 2014 WL 260988 at 5. The court did so because the claim was not within the purview of a Rule 37 proceeding, and the claim was not sufficient to void the judgment.

Kelley maintains that the claim is procedurally barred from federal court review because the Arkansas Supreme Court refused to consider it. Rather than wrestle with that question, the undersigned reaches the merits of the claim and finds that it warrants no relief.

Ordinarily, an improper jury instruction is not a basis for federal habeas corpus relief. See Davis v. Campbell, 608 F.2d 317 (8th Cir. 1979). Relief is available only if the instruction resulted in a "fundamental defect that resulted in a complete miscarriage of justice or so infected the entire trial as to deprive the defendant of a fair trial." See Berrisford v. Wood, 826 F.2d 747, 752 (8th Cir. 1987). See also Williams v. Lockhart, 736 F.2d 1264 (8th Cir. 1984) (relief available if instruction resulted in complete miscarriage of justice or omission inconsistent with rudimentary demands of fair procedures).

The jury instruction did not result in a fundamental defect that resulted in a complete miscarriage of justice or so infected the entire trial as to deprive Nelson of a fair trial. The instruction was an accurate statement of Arkansas law. See Arkansas Model Jury Instruction (Criminal) 9402. There is no evidence the instruction caused the jury to impose additional punishment, and Nelson's assertion that the instruction caused the jury to impose a longer sentence than it otherwise would have is speculation.

XIII. <u>INEFFECTIVE ASSISTANCE OF COUNSEL</u>. The record reflects that Nelson was represented at trial by two attorneys. <u>See</u> Transcript at 253. As his fifth, sixth, seventh, eighth, and tenth claims, Nelson challenges the representation they afforded him.

Some of Nelson's claims of ineffective assistance of counsel were considered by the Arkansas Supreme Court. To the extent they were, they are governed by 28 U.S.C. 2254(d), which requires a two-part inquiry. First, it requires an inquiry into whether the state court's adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. Second, it requires an inquiry into whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented.

Nelson's claims of ineffective assistance of counsel are also governed by <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), which requires its own two-part showing. First, he must show that counsel's performance fell below an objective standard of reasonableness, <u>i.e.</u>, counsel's errors were so serious he was not functioning as the "counsel" guaranteed by the Sixth Amendment. <u>See</u> <u>White v. Dingle</u>, 757 F.3d 750 (8th Cir. 2014). Second, Nelson must show prejudice, <u>i.e.</u>, a reasonable probability that, but for counsel's errors, the result of the trial would have been different. <u>See</u> <u>Id</u>. Taken together with 28 U.S.C. 2254(d), <u>Strickland v. Washington</u> establishes a "doubly deferential standard of review." <u>See</u> <u>Williams v. Roper</u>, 695 F.3d 825, 831 (8th Cir. 2012) (internal quotation omitted).

A. <u>Failure to seek trial judge's recusal</u>. Nelson maintains as his fifth claim that his trial attorneys were ineffective because they failed to seek the trial judge's recusal. <u>See</u> Pleading 1 at 13-17. Nelson maintains that his attorneys should have asked the trial judge to recuse for the following reasons: 1) the trial judge attended the same church as C.F., his parents, and his grandparents and was acquainted with all of them; 2) their pastor was the person who first went to the police about Nelson's sexual contact with C.F.; 3) C.F. was the trial judge's yard man for the two years preceding Nelson's abuse of C.F.; and 4) Nelson lived next door to the trial judge. In Nelson's reply, he offered an additional reason why his attorneys should have asked the trial judge to recuse, <u>i.e.</u>, the trial judge became angry with one of Nelson's attorneys during the suppression hearing. <u>See</u> Pleading 32 at 6-7.

The Arkansas Supreme Court considered Nelson's claim in dismissing the belated appeal of his Rule 37 petition. <u>See</u> <u>Nelson v. State</u>, 2014 WL 260988 at 1-3. The state Supreme Court applied <u>Strickland v. Washington</u> and found that Nelson failed to provide "factual support for the claim that any particular behavior on the judge's part prejudiced the defense." <u>See</u> <u>Id</u>.

The Arkansas Supreme Court's adjudication of Nelson's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The court applied clearly established federal law as announced in <u>Strickland v. Washington</u>, and the court's decision was neither contrary to nor involved an unreasonable application of that law.

The Arkansas Supreme Court's adjudication of Nelson's claim did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Although the court made no findings of fact, its decision was consistent with the evidence presented, and his claim warrants no relief. Nelson has offered nothing to substantiate his allegations. Assuming they are true, he has not shown how the trial judge's relationship with the parties adversely impacted the outcome of the trial. Nelson can point to nothing to indicate that the trial judge had an interest in the outcome of the trial. Although the trial judge made unfavorable rulings, unfavorable rulings alone are not enough to establish bias. See Harris v. State of Missouri, 960 F.2d 738 (8th Cir. 1992) (unfavorable ruling does not raise inference of bias). Something more is required, and Nelson has shown nothing else.[7] There is also no evidence that the trial judge made improper comments about Nelson or his defense. The trial judge's comments during the suppression hearing were not so egregious as to show bias.

B. Failure to properly move to suppress Nelson's statement. Nelson maintains as his sixth claim that his trial attorneys were ineffective because they did not properly move to suppress his statement. See Pleading 1 at 17-18. He maintains that they failed to obtain a copy of the statement in advance of the suppression hearing. He maintains that had his attorneys obtained a copy of the statement before the hearing, the outcome of the proceeding would have been different.

---

[7] This case is also not an instance in which bias can be presumed. See Dyas v. Lockhart, 705 F.2d 993 (8th Cir. 1983).

The Arkansas Supreme Court considered Nelson's claim as a part of dismissing the belated appeal of his Rule 37 petition. See Nelson v. State, 2014 WL 260988 at 3. The state Supreme Court applied Strickland v. Washington, 466 U.S. 668 (1984), and found that his claim was conclusory and did not demonstrate the requisite prejudice.

The Arkansas Supreme Court's adjudication of Nelson's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The court applied clearly established federal law as announced in Strickland v. Washington, and the decision of the court was neither contrary to nor involved an unreasonable application of that law.

The Arkansas Supreme Court's adjudication of Nelson's claim did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Although the court made no findings of fact, its decision was consistent with the evidence presented, and his claim warrants no relief. There is no evidence that the attorneys' failure to obtain a copy of Nelson's statement prior to the hearing was the reason, or even one of the reasons, the statement was admitted into evidence. Instead, the trial judge could and did find that the statement was given knowingly, voluntarily, and intelligently without coercion. Byrd advised Nelson of his Miranda rights prior to the interview, Nelson did not indicate that he had been drinking alcohol or taking Xanax before giving the statement, and there was nothing about his speech or demeanor to cause Byrd to believe that Nelson was impaired. Nelson seemed fully capable and competent at the time he gave the statement.

C. <u>Failure to ensure Shepard's attendance</u>. Nelson maintains as his seventh claim that his trial attorneys were ineffective because they failed to ensure Shepard's attendance at the suppression hearing and at trial. <u>See</u> Pleading 1 at 18-19. Nelson maintains that had Shepard been present and testified, he would have testified to the following: Nelson was not read his <u>Miranda</u> rights until after he gave the statement, and Nelson advised the police that he was under the influence of alcohol and Xanax when he gave the statement. Nelson also offers a proffer of Shepard's testimony. In the proffer, Nelson represents that had Shepard been called to testify at trial, he would have testified to, <u>inter alia</u>, Nelson being a good father to his children, the problems caused by C.F., and evidence tampering.

The Arkansas Supreme Court rejected Nelson's claim as a part of dismissing the belated appeal of his Rule 37 petition. <u>See</u> <u>Nelson v. State</u>, 2014 WL 260988 at 4. The court applied <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and found his bare allegations did not establish that Shepard's testimony would have been different than Byrd's testimony. The court found that counsels' failure to call Shepard was a matter of trial strategy.

The Arkansas Supreme Court's adjudication of Nelson's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The court applied clearly established federal law as announced in <u>Strickland v. Washington</u>, and the decision of the court was neither contrary to nor involved an unreasonable application of that law.

-17-

The Arkansas Supreme Court's adjudication of Nelson's claim did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Shepard was present at the suppression hearing and could have been called to testify. Nelson represents that had Shepard been called to testify at the suppression hearing, he would have testified that Nelson was not apprised of his <u>Miranda</u> rights before giving the statement and told the police he was impaired when he gave the statement. Nelson offers nothing to support his allegations. To the contrary, the testimony of Byrd established that he advised Nelson of his <u>Miranda</u> rights prior to the interview, Nelson did not indicate that he had been drinking alcohol or taking Xanax before giving the statement, and there was nothing about his speech or demeanor to cause Byrd to believe that Nelson was impaired. Nelson's proffer of Shepard's testimony at trial is equally deficient as Shepard did not verify or otherwise attest to the proffer. Moreover, his proffered trial testimony would not have been particularly compelling in light of the fact that Nelson admitted having sexual contact with C.F.

D. <u>Conflict of interest</u>. Nelson maintains as his eighth claim that one of his trial attorneys had a conflict of interest. <u>See</u> Pleading 1 at 19-21. Nelson maintains that counsel had a conflict because she had a young son approximately the same age as C.F.

The Arkansas Supreme Court rejected Nelson's claim as a part of dismissing the belated appeal of his Rule 37 petition. <u>See</u> <u>Nelson v. State</u>, 2014 WL 260988 at 4. The court applied <u>Strickland v. Washington</u>, 466 U.S. 668 (1984), and found that he failed to identify any particular conduct on the part of counsel arising from the alleged conflict.

The Arkansas Supreme Court's adjudication of Nelson's claim did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law. The court applied clearly established federal law as announced in Strickland v. Washington, and the decision of the court was neither contrary to nor involved an unreasonable application of that law.

The Arkansas Supreme Court's adjudication of Nelson's claim did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. There is no evidence that counsel actively represented conflicting interests. See Plunk v. Hobbs, 766 F.3d 760 (8th Cir. 2014) (ineffectiveness presumed when conflict of interest arising from multiple representation adversely affected representation). There is also no evidence that counsel having a child the same age as C.F. adversely affected counsel's representation of Nelson. There is no evidence it caused her to pursue an implausible strategy or tactic or prevented her from pursuing a plausible strategy or tactic. As the court could and did note, Nelson failed to "identify any particular conduct on the part of counsel that arose from the alleged conflict …" See Nelson v. State, 2014 WL 260988 at 4.

E. Counsel's impairments during the time of Nelson's trial. Nelson maintains as his tenth claim that one of his trial attorneys was suffering from a mental defect, abusing alcohol and drugs, and engaging in multiple sexual relationships during the time of Nelson's trial. See Pleading 15 at 1-5. Nelson maintains that counsel's impairments prevented her from affording him effective representation.

-19-

Kelley maintains that the claim is procedurally barred from federal court review because it was never presented to the state courts of Arkansas. Rather than wrestle with that question, the undersigned reaches the merits of the claim and finds that it warrants no relief.

Nelson has documented counsel's many personal difficulties, see Pleadings 24, 27, 30, and it is not necessary to recount them. The question, though, is not whether counsel was experiencing personal difficulties during the time of Nelson's trial. The question is whether counsel's representation was seriously deficient and prejudiced Nelson's defense.[8] Although counsel was undoubtedly experiencing the difficulties during the time of Nelson's trial, Nelson has not shown that her representation was seriously deficient. He faults her for failing to seek the trial judge's recusal, failing to properly move to suppress a statement, failing to ensure Shepard's attendance at the suppression hearing and at trial, and having a conflict of interest. There was not, though, any particular behavior on the trial judge's part that prejudiced the defense, and counsel's failure to obtain a copy of Nelson's statement before the suppression hearing was not a reason why it was admitted into evidence. Moreover, there is nothing to indicate that Shepard would have testified as Nelson represents, and Nelson did not identify any particular conduct on the part of counsel that arose from her alleged conflict of interest.

---

[8]

In Johnson v. Norris, 207 F.3d 515 (8th Cir. 2000), the petitioner maintained that he should not be held to the Strickland v. Washington standard because his trial attorney's bipolar disorder was a structural error giving rise to a presumption of prejudice. The Court of Appeals rejected the argument and used the Strickland v. Washington standard to analyze his claim of ineffective assistance of counsel.

Nelson has also not shown that counsel's representation prejudiced Nelson's defense. Nelson did not deny having sexual contact with C.F. The question for the jury was whether C.F. initiated the contact and, if so, whether it somehow excused Nelson's conduct. Any failure on counsel's part to seek the trial judge's recusal, properly move to suppress a statement, ensure Shepard's attendance at the suppression hearing and at trial, and withdraw because counsel had a child the same age as C.F. had no impact on those questions and did not affect the outcome of Nelson's trial.

F. Conclusion. "There is a strong presumption that counsel's conduct falls within the wide range of professionally reasonable assistance and sound trial strategy." See Amrine v. Bowersox, 238 F.3d 1023, 1030 (8th Cir. 2001) Nelson has failed to show that his attorneys' representation fell outside that range. He has offered few facts to support his assertions that their performance was deficient. To the extent he has alleged any facts, they do not establish the requisite prejudice, i.e., a reasonable probability that, but his attorneys' errors, the result of his trial would have been different.

IX. RECOMMENDATION. Given the foregoing, it is recommended that Nelson's petition be dismissed, all requested relief be denied, and judgment be entered for Kelley. It is also recommended that a certificate of appealability be denied.

DATED this 13th day of October, 2015.

_____
UNITED STATES MAGISTRATE JUDGE